UNITED STATES v. PATTERSON.

(District Court, D. Oregon. August 9, 1909.)

No. 5,136.

PERJURY (§ 11*)—FEDERAL STATUTE—OATH TO APPLICATION FOR PATENT.

A willfully false statement in an oath to an application for a patent, made as required by Rev. St. § 4892 (U. S. Comp. St. 1901, p. 3384), that the applicant verily believes himself to be the original, first, and sole inventor of the device for which the patent is sought, is of a material matter, and constitutes "perjury," within Rev. St. § 5392 (U. S. Comp. St. 1901, p. 3653).

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 40; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 6, pp. 5305–5310; vol. 8, p. 7751.]

On Motion for New Trial.

The trial court instructed the jury in this case as follows:

You have heard the testimony in this case, and you have listened to the argument of counsel, and it becomes my duty at this time to advise you touching the law of the case as applied to the facts which have been narrated in your hearing.

The defendant is charged by the indictment herein with having sworn falsely, under an oath administered to him by C. W. Hodson, a notary public for Oregon, in a matter material to an inquiry before the Commissioner of Patents of the United States. The indictment is drawn under section 5392 of the Revised Statutes of the United States, which provides that every person who, having taken an oath before a competent tribunal, officer, or person in any case in which the law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury.

A copy of the oath alleged to have been taken and subscribed is set forth in the indictment, whereby the defendant, Charles A. Patterson, swears "that he verily believes himself to be the original, first, and sole inventor of the improvement in buckles described and claimed in the annexed specifications," whereas it is alleged by the indictment that he, at the time of taking said oath, namely, the 14th day of March, 1907, well knew that he was not the original, first, and sole inventor of said improvement in buckles, as described and claimed in said specifications.

Under the law of Congress relating to patents it is requisite for one desiring to obtain a patent right upon a new invention, or any novel improvement on an old invention, to make application therefor in writing to the Commissioner of Patents, and file the same in the Patent Office, specifying in certain manner and particulars the invention desired to have patented. The law further requires that the petitioner shall make an oath that he does verily believe himself to be the original and first inventor or discoverer of the art, machine, or improvement for which he solicits a patent. Such an oath, declaration, or affidavit constitutes in part the proof upon which the Commissioner of Patents acts in determining whether or not the invention claimed

is new and useful, and is such a one as to entitle the claimant to a patent thereon. Thus it is that the claim for the patent forms the basis upon which this inquiry proceeds, and the oath, declaration, or affidavit subscribed in support of the application is therefore touching a matter material to the inquiry before the Commissioner of Patents, and is such a one upon which perjury may be predicated under said section 5392, if the party taking the oath or making the declaration or affidavit swore falsely with relation thereto, or if at the time of taking said oath he did not believe the matter or facts set forth therein to be true.

The plea of not guilty puts in issue all the material allegations of the indictment, and this casts upon the government the burden of proving or substantiating all of such allegations, to your satisfaction, beyond a reasonable doubt.

The law presumes the accused to be innocent until he is proven guilty. This is not a presumption to be regarded lightly, but is real and substantial, and attends the accused until it is overcome by evidence satisfying your minds of his guilt.

The real issue in this case is reduced to very narrow limits. The oath or declaration alleged to have been subscribed and verified by the defendant, I instruct you, was touching a matter material to an inquiry before the Commissioner of Patents, which disposes of that element in the case. Furthermore, the proofs touching the defendant's subscription and verification of the oath, declaration, or affidavit set forth in the indictment before C. W. Hodson, a notary public for Oregon, is very persuasive, so that there can scarcely be any question about that. Indeed, neither the defendant nor his counsel make any special question upon the subject. But, however that may be, I leave it for you to determine whether or not the defendant so subscribed and verified such oath or declaration.

The pivotal controversy is touching the alleged improvement upon the buckle which has been exhibited to you. The first question with reference to this is: Who was the original, first, and sole inventor of the improvement claimed? I refer to the invention which consists of an improvement upon a one-piece buckle; the principal features or elements of the improvement being a clamping plate, having an inner flat face, connecting with side bars at one end, the inner face of said plate lying at an angle to the normal strain, and a counter bar joining the side bars at the opposite end, with an approximately semicircular projection extending rearwardly in a plane coincident with a plane therefrom passing through a median longitudinal line of the side bars. Or, to simplify it, the invention consists of this binding plate composing the front of the buckle and the projection or lip on the connecting bar at the rear. All other features or elements claimed for the improvement are purely arbitrary and without inventive utility. I call your attention to the binding plate, which is this front piece of the buckle. This is one element of the invention. And then this lip or extension on the after bar, which is another part or element of the invention. Something has been said and testified to here before you relative to a mechanical principle which has been attempted to be illustrated by the plate marking the quarter part of a circle. But that element is not claimed in the patent itself, and it is not a part of the claim here, so that you may as well put that out of your minds. Another element as spoken of in the claim is the forward edge of the clamping plate being of appreciable width to form a binding face, and lying in a plane coincident with the plane of the forward edge of the side bars and at an angle to the plane or inner face. That refers to the face of the plane at the front of the buckle being coincident with the sides of the bar; but that is not a matter of invention. That is merely arbitrary, so that that matter is not in this case. It is also claimed in the patent that this pin is placed at right angles with the clamping face. That is an old device, and it is not claimed as a part of the improvement here; so that the improvement or the elements of the improvement are reduced to two, as I have stated them to you: Simply the binding plate, composing the front of the buckle, and the projection or lip on the connecting bar or rear. So that you can disabuse your minds of all other complications about this patent, and reduce it to these two elements or conditions.

Was it Van Emon, or was it the defendant, who was the inventor of this new improvement? Both of these men claim to be the original or first inven-

tor of said improvement. If the defendant was the original, first, and sole inventor of such improvement, then that is the end of this case; because, if so, his oath or declaration would be true, and he would not be guilty of perjury under the indictment. But if Van Emon was the original, first, and sole inventor—and this you must ascertain—then another question will arise, which has two aspects, namely: Whether the defendant knew that Van Emon was such original, first, and sole inventor, and, having such knowledge, took the oath or made the declaration in question; or whether he had no such knowledge of such fact, but, knowing that he himself was not such inventor, verified said oath or declaration—because in either event he could not have believed the alleged facts stated in said oath or declaration to be true.

In this relation, I further instruct you that, to constitute perjury, the false oath must have been taken willfully and corruptly; that is to say, it must have been taken with some degree of deliberation, and with an intent to testify falsely, and the accused must not, at the time, have believed the fac so verified and sworn to to be true. The intent or motive being a condition of the mind, you must determine as to that by the acts and demeanor of the accused, and by all the attendant facts and circumstances. Men do not usually act without some impelling influence, some purpose in view; and for the ascertainment of that purpose, or the intent or motive behind it, where there is no express declaration respecting it by the accused, resort must be had to his acts and demeanor, his relationship with the principal and controlling facts in the case, and all the attendant circumstances that may throw light upon the subject.

False swearing, in an honest belief that the statements verified are true, could not constitute perjury; and if the defendant, when he made oath to the declaration in question, truly believed that he was the original, first, and sole inventor of the specified improvement, and honestly and in good faith believed such statement to be true, he would not be guilty of the charge. The law also presumes that a person to whom a patent has been issued is the original and first inventor of the device or thing patented; that is to say, the production of the patent makes a prima facie case in his favor. But this presumption or prima facie case may be overcome by proof to the contrary, and has been overcome in the courts, because patents have been set aside and canceled on subsequent ascertainment and proof that the claimant was not in truth and in fact such original and first inventor.

It is further essential to this case, before a conviction can be had, that Van Emon must have been the original and first inventor of the improvement upon a one-piece buckle containing the same elements that defendant has obtained the patent upon, which principal and essential elements I have explained to you heretofore. For the ascertainment, therefore, as to who of these parties. Van Emon or the defendant, was the original, first, and sole inventor of this improvement in question, you will take into consideration the relationship of the parties. the purchase of the Larson claim or application for patent jointly by Van Emon, the defendant, and Mrs. Parrish, the opportunity afforded the parties, namely, Van Emon and the defendant, for ascertaining minutely the elements of such claim, the suggestions and discussions between them and others as to its utility, and touching any improvement thereto, and especially the improvements in question; the further joint application for a patent upon a buckle by Van Emon, the defendant, and Mrs. Parrish, the purpose they had in view in making such application, and the final withdrawal of such claim, and how and why it was done; and the subsequent application of the defendant alone for the patent to the improvement in question, and how and why he so made the application alone, and without joining with the other parties concerned in the previous claims for a patent particularized by the last invention upon a one-piece buckle.

You will further take into consideration the models that have been produced here by the respective parties, namely, Van Emon and the defendant, and determine, if you can, who originated or produced the first and primary idea of the improvement, which is shown forth by the one-piece buckle patent—whether, considering all these, together with other testimony in the case bearing upon the subject, bearing in mind at the same time the credibility of the witnesses and the weight to be given such testimony, Van Emon produced the original, first, distinct and definite idea of the improvement, not vague and

fanciful, but well-defined, exact, and susceptible of demonstration, or whether the defendant was the original, first, and sole inventor, as he declares under oath that he believes he was. If he was not such original, first, and sole inventor thereof, as I have said before, and was conscious that Van Emon was such inventor, if you so find that Van Emon was, or was conscious that he (defendant) was not such original, first, and sole inventor, and deliberately, with culpable and corrupt intent, swore to such declaration that he believed he was the original, first, and sole inventor of such improvement, and did not at the time believe the declaration to be true, he would be guilty under the charge. Otherwise, he should be acquitted.

I will explain to you now the significance of the expression "reasonable doubt." It is such a doubt as exists in reason—not captious, frivolous, or whimsical, but of substantial moment—and intercepts or arrests satisfactory conviction in the mind, and causes hesitation and uncertainty as to the real fact. Applied to a finding as to the guilt of the accused in criminal practice, it is such a doubt, suggested by the dictates of reason, common sense, or common understanding, not fanciful or far-fetched, as will intercept fair conviction in the minds of the jury touching the guilt of the accused under the charge for which he is being tried, after a careful survey and consideration of all the testimony in the case. Stated objectively, it is that state of the case which, after entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty as to the truth of the charge. If, therefore, upon such proof as here adduced, considering it in its fullness and entirety, there remains in your minds a reasonable doubt as to the guilt of the accused, he is entitled to the benefit of it by an acquittal; that is, the evidence must establish guilt under the charge to a reasonable and moral certainty—a certainty that convinces and directs your understanding, and satisfies your reason and judgment, acting under your duties and obligations as jurors.

It is the province of the court to instruct you touching the law governing the cause at issue, and you will take and accept the law given to be the law in the case. But it is your sole province, under the instructions of the court, to find the fact or facts from the testimony adduced; that is, you must judge of the effect of the evidence and return your verdict accordingly. And here I will say to you that, if the court has expressed an opinion upon the fact or facts in the case, you will not be controlled by that, but you must use your own judgment upon that subject. Your power and authority of judging of the effect of evidence is, however, not arbitrary; but your function in that regard should be exercised with legal discretion, and in subordination to the rules of evidence. For instance, you are not bound to find in conformity with the declarations of any number of witnesses, which do not produce conviction in your minds, against a less number, or against a presumption or other evidence satisfying your minds. To justify conviction upon a charge of perjury, it must be supported by the testimony of two credible witnesses, or by one witness worthy of credit and other corroborating proof or circumstances.

A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character on oath, or by contradictory evidence. And a witness false in one part of his testimony is to be distrusted in all.

Being the judges of the effect and value of the evidence, you are necessarily the judges also of the credibility of the witnesses. This you must determine by the manner in which the witness deports himself upon the witness stand—whether he appears to be candid and fair, or whether he is evasive, or is swift, or is reserving part of the truth, not detailing the whole truth, and also by testimony serving to contradict or impeach the witness, or by any facts or circumstances appearing in the case tending to his discredit, considering at the same time any bias or interest the witness may have in the cause. In this relation, I direct your attention to the fact that the defendant has taken the witness stand in his own behalf, which he had a right to do, if he so chose. Having gone upon the stand, it was competent for the government to discredit his testimony, as that of any other witness, and by the same methods. You can properly consider, therefore, his manner of testifying, the inherent probabilities of his story, the amount and character of the contradictory testimony,

the nature and extent of his interest in the result of the trial, and the impeaching evidence, whatever it may be, in determining how much credence he is entitled to.

Now gentlemen of the jury, you will take this case, and, under the instructions that I have given you, acting fairly and impartially, and without prejudice or bias, either towards the government or towards the defendant, as triers of fact, you will determine from all the testimony adduced at the trial whether the defendant is guilty or not guilty under the charge contained in the indictment, as I have explained it to you, and render your verdict accordingly.

Walter H. Evans and J. R. Wyatt for the United States.
H. H. Riddell, R. A. Wade, and E. S. J. McAllister, for defendant.

WOLVERTON, District Judge. This is a motion for a new trial, based upon the instructions of the court touching the alleged crime charged in the indictment, namely, perjury, and what act or asseverations on the part of the defendant would render him guilty of that offense.

The indictment is drawn under section 5392 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3653), which provides that every person who, having taken an oath before a competent tribunal, officer, etc., that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury. It is alleged in the indictment that the defendant took an oath before C. W. Hodson, a notary public, to the effect that:

"He verily believes himself to be the original, first, and sole inventor of the improvement in buckles described and claimed in the annexed specification; that he does not know and does not believe that the same was ever known or used before his invention or discovery thereof."

The indictment negatives the statements in the oath in the following language:

"Whereas, in truth and in fact, the said Charles A. Patterson, at the time when he so swore and made his said declaration and affidavit as aforesaid, well knew that he was not the original, first, and sole inventor of said improvement in buckles," etc., and that he "well knew and believed that the same had been known and used before his alleged invention and discovery thereof."

The theory upon which the case was tried, and that upon which the court instructed the jury, was that the charge of perjury was based upon the words contained in the oath. namely:

"That he verily believes himself to be the original, first, and sole inventor of the improvement in buckles."

This is indicated by the instruction of the court, as follows:

"Was it Van Emon, or was it the defendant, who was the inventor of this new improvement? Both of these men claim to be the original or first inventor of said improvement. If the defendant was the original, first, and sole inventor of such improvement, then that is the end of this case; because, if so, his oath or declaration would be true, and he would not be guilty of perjury under the indictment. But if Van Emon was the original, first, and sole inventor—and this you must ascertain—then another question will arise, which has two aspects, namely: Whether the defendant knew that Van Emon was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such original, first, and sole inventor, and, having such knowledge, took the oath or made the declaration in question; or, whether he had no such knowledge of such fact, but, knowing that he himself was not such inventor, verified said oath or declaration—because in either event he could. not have believed the alleged facts stated in said oath or declaration to be true."

It will be seen that the word "sole" has a material bearing, both on the theory upon which the case was tried and on that upon which it was put to the jury by the instruction of the court. If perjury cannot be predicated upon the use of that word, in connection with the words "original" and "first," the oath having been made in a proceeding to obtain a patent, then a new trial should be granted; otherwise, it must be conceded that the judgment is proper: The theory upon which the court proceeded is that the oath was taken in an inquiry before the Commissioner of Patents as to whether a patent should issue for this improvement in buckles to Patterson, the applicant for the patent.

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, and not in public use or on sale in this country for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor." Section 4886, Rev. St. (U. S. Comp. St. 1901, p. 3382).

It is further provided (section 4888, Rev. St. [U. S. Comp. St. 1901, p. 3383]) that, before any inventor or discoverer shall receive a patent for his invention or discovery, he shall make application therefor, in writing, to the Commissioner of Patents (specifying what the application shall contain), which application shall be signed by the inventor and attested by two witnesses. Then follows the requirement of section 4892 (page 3384), which is as follows:

"The applicant shall make oath that he does verily believe himself to be the original and first inventor or discoverer of the art, machine, manufacture, composition, or improvement for which he solicits a patent; that he does not know and does not believe that the same was ever before known or used."

Then by section 4893:

"On the filing of any such application and the payment of the fees required by law, the Commissioner of Patents shall cause an examination to be made of the alleged new invention or discovery; and if on such examination it shall appear that the claimant is justly entitled to a patent under the law, and that the same is sufficiently useful and important, the Commissioner shall issue a patent therefor."

It is plain to be seen from these statutes that the Commissioner of Patents has a very important duty to perform in this relation, namely, that of an examination of the application and proofs, for a determination as to whether or not the applicant is entitled to the patent applied for. It seems to me, therefore, that the subscribing of the oath in question was the production of matter material to that inquiry, and a false oath taken with reference thereto would bring the case within the intendment of section 5392 of the Revised Statutes, and

would render the affiant guilty of perjury. And this is the especial theory upon which the court instructed the jury in the case.

By rule 46 adopted by the Commissioner of Patents, with the approval of the Secretary of the Interior:

"The applicant, if the inventor, must make oath or affirmation that he does verily believe himself to be the original and first inventor or discoverer of the art, machine, manufacture, composition, or improvement for which he solicits a patent; that he does not know and does not believe that the same was ever before known or used, and shall state of what country he is a citizen and where he resides, and whether he is a sole or joint inventor of the invention claimed in his application."

This rule, if not authorized by law, of course, could not make that perjury which is not constituted perjury. under the statute of Congress. One of the purposes of the inquiry, as indicated by the rule, was to determine whether the applicant was the sole inventor, or whether he had invented a device jointly with some one else. If he were jointly interested with some one else, it is plain that he would not be entitled to a patent in his own right; so that this condition was one very material to the inquiry before the Commissioner of Patents. The Commissioner, if it had appeared by the application in question and under the affidavit made by the defendant, Patterson, that he was a joint inventor with some other person, would not have issued him any patent at all, or else would have issued the same to Patterson jointly with the other individual entitled with him to an interest therein. So it is the use of the word "sole" was a thing material and important in the inquiry being made, and that an oath taken with reference thereto, if false, constituted perjury under section 5392. After all, the word "sole" is a shorter way of saying that the applicant does not know and does not believe that the same, namely the invention, was ever before known or used. If the applicant was a joint inventor with some one else, it follows, without question, that it would have been previously known and used. Hence the word "sole" means the same thing, practically, as is couched by signification in the clause just alluded to. But it seems to me, however, that the use of the word "sole" in the affidavit as subscribed, in connection with the words "original" and "first," has a significant and material bearing in the inquiry which was then being prosecuted before the Commissioner of Patents, and that a false oath with reference thereto renders the affiant guilty of perjury.

I am familiar with the doctrine as announced in the cases of Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, and Robnett v. United States (C. C. A.) 169 Fed. 778; but in those cases the oath was taken with reference to matter not deemed material to the inquiry, and it seems to me they do not have application here.

For these reasons, the motion for a new trial will be denied.