[Sac. No. 5034.   In Bank.—September 15, 1936.]

GEORGE F. GILGERT, Respondent, v. STOCKTON PORT DISTRICT et al., Appellants.

Louttit, Marceau & Louttit, Thomas S. Louttit and Orrick, Palmer & Dahlquist for Appellants.

Hubert H. Briggs and Frederick L. Felton for Respondent.

PULLEN, J., *pro tem.*—Respondent is the owner and in possession of a piece of real property in the city of Stockton, which properly lies within the exterior boundaries of Stockton Port District. This district is a public corporation created under an act of the legislature entitled "Port District Act, Statutes 1931, Ch. 1028," and is governed by a board of five commissioners.

The land of Gilgert is located near the deep-water channel of the port of Stockton, and he has negotiated leases with certain oil companies for the erection of tanks upon said land for the storage of petroleum products.

Prior to the completion of this proposed development, Stockton Port District passed an ordinance known as ordinance number 13, which provided, among other things, that it was unlawful for any person, firm or corporation to erect or install any tank or wharf at any place within a specified area of the Stockton Port District, which area included the land of respondent, and declared any violation thereof to be a misdemeanor and subjected a violator thereof to fine and imprisonment.

The trial court, after a trial upon the issues raised by the complaint of respondent praying that the "Port District Act" be declared invalid and that ordinance number 13 be likewise held invalid and void, and asking that the officers of the Port District be restrained and enjoined from enforcing the provisions thereof, found that ordinance number 13 was unconstitutional for the reason that the Port District had no legal authority to enact a zoning ordinance or to provide in an ordinance any prohibitory restrictions as to the use of the lands of respondent, and for the further reason that in certain of its provisions the legislature, through the Port District Act, attempted to delegate to the district authority to pass police measures or regulations, which delegated powers the district was attempting to exercise.

The act providing for the creation of the Stockton Port District (Stats. 1931, chap. 1028, Deering's Gen. Laws, 1931,

Act 3202) declares that any port district created thereunder is a public corporation created for municipal purposes, and delegates to the district the power among others:

"To enact necessary police regulations, provide for control of any waterway project of the United States entering said district, and to prescribe the rules and regulations concerning the construction of wharves, docks, buildings and improvements of all types contemplated. . . .

"To lay out, plan, and establish the general plan and system of harbor and harbor district improvements, and from time to time to modify such plan and to prescribe the specifications for such improvements.

"To prescribe fines, forfeitures and penalties for the violation of any provision of any ordinance, but no penalty shall exceed $500.00, or six months imprisonment, or both.

"Notwithstanding the enumeration and specific statement herein of particular powers, the port district shall have the power to do and perform all acts and things necessary and appropriate to carry out the purposes of this act, and the powers of the port district."

▮ The question for determination as presented by appellant is, "Is it within the constitutional power of the legislature of the state of California to confer upon a public corporation created for governmental purposes, the authority to enact local police regulations germane to the purposes for which the corporation has been created, and provide a penalty for the violation of such a regulation?"

The police power is vested primarily in the state. Section 11 of article XI provides, "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." In the enumeration of political subdivisions to which the Constitution has granted the right to make and enforce police regulations, we do not find port districts, and it is a rule of recognized construction that the expression of one thing necessarily involves the exclusion of other things not expressed.

In *In re Werner*, 129 Cal. 567 [62 Pac. 97, 100], an application for a writ of *habeas corpus* was filed to contest the validity of the commitment of Werner, the petitioner, for a violation of an ordinance which provided that any person within a sanitary district who kept a saloon or sold liquor

at retail without first having his license approved by the sanitary board, was guilty of a misdemeanor.

The original act for the creation of sanitary districts provided in its title that said act was, ''An Act to provide for the formation, government, operation and dissolution of sanitary districts in any part of the state; for the construction of sewers and other sanitary purposes; the acquisition of property thereby; calling and conducting of elections in said district; the assessment, levy and collection, custody and disbursement of taxes therein; the issuance and disposal of bonds thereof; the determination of their validity; and making provisions for the payment of such bonds, and the disposal of their proceeds.'' Thereafter the legislature passed an act to amend this Sanitary Act and sought to amend the title of the original act by adding to the title a provision for empowering sanitary boards ''to provide in other respects for the good order and welfare of sanitary districts'', and at the same time amended section 2 of the act to give to the sanitary board power ''to make and enforce all necessary and proper regulations for suppressing disorderly and disreputable resorts and houses of ill-fame within the district, and to determine the qualifications of persons authorized to sell liquor, and from and after the passage of this act, no license to keep a saloon, or sell liquor at retail, shall take effect, or be operated within a sanitary district, unless the same be approved by the sanitary board of the district''.

It was contended by the petitioner in the Werner case that the amendatory act was unconstitutional, because in violation of article IV, section 24, of the Constitution. The court there held that there was nothing in the title of the act which referred to the question of regulating the sale of liquors, or prescribed the qualifications of persons dealing therein, and the amended act therefore embraced a new and distinct subject which was not embraced in the title of the act. It was also there held that the Constitution, by section 11 of article XI, delegated police regulations to other corporate bodies, namely, counties, cities, towns, townships, and the exercise of such powers by a sanitary district was void. The court in that connection said:

''Under the rules of construction, *expressio unius est exclusio alterius*, the legislature has no authority to create other

public corporate bodies . . . whether called districts or by any other name, and clothe them with the power to make and enforce local police, sanitary and other regulations conferred by the Constitution upon counties, cities, towns or townships.''

The court there also, in considering the power possessed by a sanitary district, said that a sanitary district no more than an irrigation, reclamation nor drainage district was possessed of these powers, which properly belonged to cities and municipal bodies exercising local governmental functions, and cited various definitions of the words ''municipal'' and ''municipality'', to indicate that such terms refer only to a borough, a city, town or village, and that the use of such words in the Constitution referred only to counties, cities, towns and townships as being so classified.

Mr. Justice McFarland, in a concurring opinion, based his reasoning upon an additional ground, in the following language: ''I desire, however, to say explicitly that, in my opinion, the legislature cannot, under· any circumstances, delegate to such a thing as a sanitary district the power of enacting penal legislation. That power must be confined to the municipalities mentioned in the Constitution which are given police powers, etc. The Constitution does not contemplate that the state should be overrun and overloaded with innumerable legislative bodies, each having power to make laws under which citizens may be sent to jail.''

It was contended by appellants that these portions of the decision in the Werner case, *supra,* dealing with penal legislation by sanitary districts were *dicta,* and therefore not binding here, but this court in *Bank of Italy Nat. T. & S. Assn.* v. *Bentley,* 217 Cal. 644 [20 Pac. (2d) 940], has held as follows:

''It is well settled that when two independent reasons are given for a decision, neither one is to be considered mere *dictum,* since there is no more reason for calling one ground the real basis of the decision than the other. The ruling on both grounds is the judgment of the court and each is of equal validity.''

Cooley in his work on Constitutional Limitations, seventh edition, states the rule as to the delegation of authority on page 163, as follows:

"One of the settled maxims in Constitutional law is that the power conferred upon the Legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state had located the authority, there it must remain; and by the Constitutional agency alone the laws must be made until the Constitution itself is changed."

The Supreme Court of the United States has recently considered the question in *Schlecter Poultry Co.* v. *United States*, 295 U. S. 495 [55 Sup. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947], where the Congress attempted to delegate to certain commissions, code-making authority, and there the court held that the code-making authority attempted to be conferred upon a commission was an unconstitutional delegation of legislative power.

In the creation of the board of harbor commissioners of the port of Eureka, Statutes 1869–70, page 744, it was attempted to confer upon that board power to impose penalties for any violation of such rules and regulations as that board should make pursuant to the act creating it, not exceeding, for any one violation, the sum of $500. This provision was declared unconstitutional in the case of *Board of Harbor Commissioners, etc.*, v. *Excelsior Redwood Co.*, 88 Cal. 491 [26 Pac. 375, 22 Am. St. Rep. 321]. The court there held that conceding the legislature could delegate to the plaintiff the authority to make rules and regulations with reference to the navigation of Humboldt Bay, the penalty for a violation thereof was in the hands of the legislature, and the error was not cured by fixing a maximum penalty, for the vice lay in attempting to delegate such legislative power to plaintiff.

To the same effect was the holding in the case of *Ex parte Cox*, 63 Cal. 21, involving the board of viticultural commission, and *Ex parte McNulty*, 77 Cal. 164, 166 [19 Pac. 237, 11 Am. St. Rep. 257], where the board of medical examiners attempted to declare what acts constituted a misdemeanor and punish accordingly. ■ For the purpose of local legislation certain functions may be conferred upon and exercised by various political subdivisions existing under our complex system of self-government, but we cannot believe either the people or the legislature intended to bestow upon such agencies the power to declare penalties for the violation

of the many and varied rules and ordinances they might see fit to enact.

So much for the contention that a *quasi*-municipal corporation is empowered with authority to declare a violation of its rules and ordinances to be a misdemeanor and punishable as such.

It is next urged that such a state agency may, without constitutional authority, enact zoning ordinances or laws.

That the power to pass zoning ordinances is conferred by the state Constitution (art. XI, sec. 11) and by a legislative enabling act (Stats. 1917, p. 1419) is held in the following cases: *A. C. Blumenthal & Co., Inc.*, v. *Cryer*, 71 Cal. App. 668 [236 Pac. 216]; *Miller* v. *Board of Public Works*, 195 Cal. 477 [234 Pac. 381, 38 A. L. R. 1479]; *Zahn* v. *Board of Public Works*, 195 Cal. 497 [234 Pac. 388]; *Dwyer* v. *City Council of Berkeley*, 200 Cal. 505, 511 [253 Pac. 932]; *Hurst* v. *City of Burlingame*, 207 Cal. 134, 142 [277 Pac. 308, 312].

Port districts have not been empowered to create zones. No legislative act has been passed granting this privilege to such agencies, as it has to a city council, board of trustees or other legislative body of any incorporated city or town for the public's interest, health, comfort or convenience, or the preservation of the public peace, safety, morals, order and public welfare of such communities.

Zoning is the deprivation, for the public good, of certain uses by owners of property to which their property might otherwise be put, but before the owner may thus be deprived of his property and the enjoyment thereof he is entitled to adequate notice and a hearing thereon.

In *Berrata* v. *Sales*, 82 Cal. App. 324 [255 Pac. 538, 540], the court said:

"It needs no citation of authorities to support the statement that notice of the proposed passage of a zoning ordinance limiting the use of property which, otherwise, naturally attaches to the property in question is a substantial matter and is one in which property owners are entitled to notice. The property owner, as has been so frequently said in other cases, is entitled to have his day in court."

Under the Port District Act we find no machinery provided for such notice. Section 7 of the act provides that the

powers of a port district shall be exercised by the port commission by ordinance or resolution passed by a majority vote, and that all such ordinances shall be published in a newspaper before final passage. Nowhere is provision made for any hearing, and no time is provided to elapse between the publishing. of the notice of the ordinance and before final passage thereof.

There is no doubt but what the legislature has power to delegate to a port commission authority to make reasonable rules and regulations for the administration of any branch of the state's business pertinent to the functions of the commission or board, but no such board or commission may declare a violation of such rules or regulations, when so established, to be a crime. (*In re Potter,* 164 Cal. 735 '[130 Pac. 721]; *People* v. *Kuder,* 93 Cal. App. 42 [269 Pac. 198, 630]; *Metropolitan Water Dist.* v. *Whitsett,* 215 Cal. 400 [10 Pac. (2d) 751].)

We are of the opinion, therefore, that in so far as the Port District Act attempts to delegate penal authority to the port district or its commission, or attempts to confer authority to zone property within its boundaries, it is unconstitutional, and ordinance number 13 of the Stockton Port District, in so far as it purports to declare a violation of its provisions a misdemeanor and as such punishable by fine and imprisonment, is unconstitutional and void, and the judgment from which this appeal is taken must be affirmed, and it is so ordered.

Thompson, J., *pro tem.,* Waste, C. J., Shenk, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.